**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAJKUMAR RAJAPPAN, as representative of a class of similarly situated persons, and on behalf of the BLOOMBERG L.P. 401(K) PLAN,<br><br>PLAINTIFF,<br><br>v.<br><br>BLOOMBERG L.P., THE BLOOMBERG INVESTMENT COMMITTEE and its members, THE BLOOMBERG RETIREMENT PLAN COMMITTEE and its members, and JOHN DOES 1–40,<br><br>DEFENDANTS. | **Case No.**: 1:26-CV-00785-GHW-BCM<br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

## I.      INTRODUCTION

1.      Plaintiff Rajkumar Rajappan brings this action under the Employee Retirement Income Security Act ("ERISA") § 502(a)(2), 29 U.S.C. § 1132(a)(2), on behalf of the Bloomberg L.P. 401(k) Plan (the "Plan"), and the Plan's participants and beneficiaries, against the Bloomberg Defendants for breach of fiduciary duties under ERISA, 29 U.S.C. §§ 1001–1461.

2.      Bloomberg L.P., the Bloomberg Investment Committee and its members (the "Investment Committee"), the Bloomberg Retirement Plan Committee and its members (the "Retirement Plan Committee"), and John Does 1–40 (collectively, "Defendants," "Bloomberg," or "Bloomberg Defendants") are the fiduciaries of the Plan who breached their duty.

## II.      OVERVIEW OF CLAIMS

3.      According to Black's Law Dictionary 12th Edition, "imprudent" means "not sensible or unwise; showing poor judgment." As alleged in this First Amended Complaint,

Bloomberg's failure to remove the Harbor Capital Appreciation Fund (the "Harbor Fund")[1] and the Parnassus Core Equity Fund (the "Parnassus Fund")[2] from the Plan after December 31, 2019 fits every word of that definition. (The Harbor Fund and the Parnassus Fund are collectively referred to as the "Challenged Funds" herein.)

A.    **The Harbor Capital Appreciation Fund**

4.    Since being added to the Plan in 2010, the Harbor Fund has cost the Plan upwards of $343 million in lost retirement savings, including $199 million since January 1, 2020.

5.    Since being added to the Plan in 2010, the Harbor Fund has underperformed its investment benchmark, the Russell 1000 Growth Index (the "Russell Index")[3], by 171% (951% v. 780%).

---

[1] The Harbor Fund has undergone multiple reorganizations. It was first organized as a mutual fund. In 2021, its assets were transferred to a newly formed entity called the Harbor Capital Appreciation Collective Investment Trust Class 4. In and around 2023, those assets once again were transferred to a portfolio called the Harbor Capital Appreciation Collective Investment Trust Class R. The investment teams, aims, risks, and potential rewards of each are identical, and the portfolio holdings are substantially identical. From the perspective of the Plan, the conversion from the mutual fund to the collective investment trust reflected a continuation of the same investment option. Although separate legal entities, the Harbor Capital Appreciation Collective Investment Trust Class 4 and Class R are clones of the Harbor Fund and of each other. Accordingly, throughout this First Amended Complaint, Plaintiff uses the term "Harbor Fund" to refer collectively to the mutual fund and collective investment trusts.

[2] The Parnassus Fund also has undergone a reorganization while in the Plan. In 2022, its assets were transferred to an entity called the Parnassus Sustainable Core Equity Collective Investment Trust Class 1. The investment teams, aims, risks, and potential rewards of each are identical, and the portfolio holdings are substantially identical. From the perspective of the Plan, the conversion from the mutual fund to the collective investment trust reflected a continuation of the same investment option. Although separate legal entities, the Parnassus Sustainable Core Equity Collective Investment Trust Class 1 is a clone of the Parnassus Fund. Accordingly, throughout this First Amended Complaint, Plaintiff uses the term "Parnassus Fund" to refer collectively to the mutual fund and collective investment trust.

[3] The Russell 1000 Growth Index is independently maintained by FTSE Russell, a wholly-owned subsidiary of the London Stock Exchange Group. FTSE Russell is a leading global provider of benchmarking, analytics, and data solutions for investors with over 30 years in the business. The Russell 1000 Growth Index measures the performance of the large-cap growth segment of the U.S.

6.      As shown in Section X.A below, Table 1.a, the Harbor Fund underperformed the Russell Index at the three-year, five-year, seven-year, and ten-year marks (2012, 2014, 2017, and 2019).

7.      Between January 1, 2010 and December 31, 2019, the Harbor Fund underperformed the Russell Index cumulatively by over 23% (312% v. 288%), or on average 0.67% each year.

8.      The Harbor Fund's underperformance was even worse when compared to its Comparator Funds (detailed below in Sections VIII and X.A).

9.      Annual underperformance of this magnitude is significant. For a 35-year-old participant with $100,000 savings, underperformance of 0.67% during this ten-year stretch cost them $24,000 of their hard-earned savings. Another 20 years of this kind of underperformance and the participant would lose more than $130,000. Based on the underperformance since 2020, the Harbor Fund is well on its way to achieving this level of underperformance.

10.      Annual underperformance of this magnitude is also almost impossible to make up. Statistically speaking, funds with this level of long-term underperformance are more likely to continue to underperform. The U.S. large cap market has been particularly challenging for active managers due to its high transparency and efficiency, which leaves little room to add value over representative indexes.

11.      For the Plan participant, these losses are all too real.

---

stock market. It includes those Russell 1000 companies with relatively higher price-to-book ratios, higher forecast medium-term growth, and higher sales-per-share historical growth (*i.e.*, growth companies).

12.     For a participant starting on the journey to retirement, the Harbor Fund represents a flawed investment strategy and a severe roadblock to a successful retirement. For the thousands of participants who held interests in the Harbor Fund, theirs was a shared journey of misfortune.

13.     Any prudent fiduciary exercising stewardship over the Plan would understand this and would not want to keep a fund of that kind very long. Yet the Bloomberg Defendants did just that.

14.     The Harbor Fund's underperformance worsened after December 31, 2019. As shown in Section X.A below, Tables 1.b. and 1.c, the Harbor Fund's cumulative performance fell over 24% under the Russell Index (154.87% v. 130.46%).

15.     The Bloomberg Defendants would have known well enough in real time that the Harbor Fund could not be expected to provide higher investment returns for the Plan than the Comparator Funds with the same risk profiles. Yet the Bloomberg Defendants failed to seize the opportunity to remove and replace the Harbor Fund.

16.     As evident from these facts, the Harbor Fund was an imprudent investment, and its retention in the Plan beyond December 31, 2019 could only be the product of an imprudent process.

**B.     The Parnassus Core Equity Fund**

17.     In 2015, the Bloomberg Defendants selected the Parnassus Fund as an investment option for the Plan. The Parnassus Fund also invests in the largest companies in the United States. It is identified as a large cap core fund. Its stated benchmark is the S&P 500 Index (the "S&P").[4]

---

[4] The Standard and Poor's 500 Index, or simply the S&P 500 Index, is independently maintained by S&P Dow Jones Indices LLC, a global analytics company and division of S&P Global. S&P Global Ratings is the largest global provider of financial market indices, which serve as benchmarks for investors worldwide. The S&P 500 Index measures the performance of the large-cap segment of the U.S. stock market. It includes 500 leading U.S. companies and covers about 80% of the available U.S. market capitalization.

4

18.   As of December 31, 2024, Plan participants had invested over $437 million of their retirement savings in the Harbor Fund and over $59 million in the Parnassus Fund.

19.   In the five years leading up to its selection in the Plan in 2015, the Parnassus Fund underperformed the S&P by almost 5% (105% v. 100%).

20.   As illustrated in Table 2.a., in the three years after being added to the Plan, the Parnassus Fund underperformed the S&P by over 9% (38% v. 29%).

21.   Between January 1, 2015 and December 31, 2019, the Parnassus Fund continued to struggle against the S&P, underperforming it again by over 5% (74% v. 69%), and on average by 0.67% annually.

22.   As noted in ¶ 9 above, underperformance of 0.67% is significant.

23.   The Parnassus Fund's underperformance was even worse when compared to its Comparator Funds (detailed below in Sections IX and X.B).

24.   The Parnassus Fund gave no indication that it could be expected to outperform in the future and catch up to the S&P.

25.   The Parnassus Fund's underperformance worsened after December 31, 2019. As shown in Section X.B below, Tables 2.b. and 2.c, the Parnassus Fund's cumulative performance fell over 22% under the S&P Index (122% v. 99%).

26.   As illustrated in Table 2.c., since being added to the Plan in 2015, the Parnassus Fund has cost the Plan upwards of $15 million in lost retirement savings.

27.   The Bloomberg Defendants would have known well enough in real time that the Parnassus Fund could not be expected to provide higher investment returns for the Plan than the Comparator Funds with the same risk profiles. Yet the Bloomberg Defendants failed to seize the opportunity to remove and replace the Parnassus Fund.

28.     As evident from these facts, the Parnassus Fund was an imprudent investment, and its retention in the Plan beyond December 31, 2019 could only be the product of an imprudent process.

**C.        Plan-Wide Claims**

29.     To remedy Bloomberg's breach of fiduciary duty, Plaintiff brings this action on behalf of the Plan, its participants, and their beneficiaries under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), to enforce the Bloomberg Defendants' personal liability under ERISA § 409(a), 29 U.S.C. § 1109(a), to make good to the Plan all losses resulting from each breach of fiduciary duty occurring during the Class Period (as defined below in ¶ 190.a). In addition, Plaintiff seeks such other Plan-wide equitable or remedial relief for the Plan as the Court may deem appropriate.

30.     Plaintiff did not have knowledge of all material facts (including, among other things, comparisons of the Plan's investment performance relative to other available investment alternatives) necessary to understand that the Bloomberg Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before filing the original Complaint in this case. Further, Plaintiff does not have actual knowledge of the specifics of the Bloomberg Defendants' decision-making processes with respect to the Plan, including the Bloomberg Defendants' processes for monitoring and removing Plan investments, because this information is solely within the possession of the Bloomberg Defendants prior to discovery. Plaintiff has drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth herein.

### III.    PARTIES

**A.    Plaintiff**

31.    Plaintiff Rajkumar Rajappan brings this suit in a representative capacity on behalf of the Plan and its participants and beneficiaries pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), seeking appropriate relief under ERISA § 409, 29 U.S.C. § 1109, to protect the interests of the Plan. Plaintiff Rajkumar Rajappan was a participant in the Plan, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), during the Class Period.

**B.    Defendants**

32.    Defendant Bloomberg is headquartered in New York, New York, and is a major financial, media, software, and analytics company. Bloomberg is the Plan sponsor. Bloomberg acts through its Board of Directors.

33.    Defendant Bloomberg Investment Committee chooses the investment options for the Plan and periodically monitors and reviews the Plan's investment options. It may revise the Plan's investment line-up at any time. Current and former members of the Bloomberg Investment Committee are or were fiduciaries of the Plan under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because they have exercised discretionary authority and/or discretionary control respecting management of the Plan. Bloomberg selects the members of the Committee.

34.    Defendant Bloomberg Retirement Plan Committee manages the operation and administration of the Plan. Current and former members of the Bloomberg Retirement Plan Committee are or were fiduciaries of the Plan under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because they have exercised discretionary authority and/or discretionary control respecting management of the Plan. Bloomberg selects the members of the Committee.

35.     Plaintiff is not currently aware of the identities of the individual members of the Bloomberg Investment Committee and the Bloomberg Retirement Plan Committee during the Class Period. Accordingly, those individuals are collectively named Defendants John Does 1–30 (the "Doe Defendants"). Plaintiff will substitute the real names of the Doe Defendants when they become known to Plaintiff.

36.     Further, Plaintiff is not currently aware of the identities of the members of the Board of Directors who delegated responsibility to the Bloomberg Investment Committee and the Bloomberg Retirement Committee. Accordingly, those individuals are named Defendants Does 31–40. Plaintiff will substitute the real names of the Does when they become known to Plaintiff.

37.     To the extent the Defendants delegated any of their fiduciary functions to another person or entity, the nature and extent of which has not been disclosed to Plaintiff, the person or entity to which the function was delegated is also a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) and is thus also alleged to be a Doe Defendant.

## IV.     JURISDICTION, VENUE, AND STANDING

38.     This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because it is an action under 29 U.S.C. § 1132(a)(2).

39.     This District is the proper venue for this action under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because it is the District in which the subject Plan is administered and where at least one of the alleged breaches took place. It is also the District in which the Bloomberg Defendants reside.

40.     As a Plan participant and holder of the Harbor Fund, Plaintiff has standing to bring claims on behalf of the Plan as a whole pursuant to 29 U.S.C. § 1132(a)(2), as he is a participant seeking appropriate plan-wide relief under 29 U.S.C. § 1109. Thus, Plaintiff brings this suit under

§ 1132(a)(2) in a representative capacity on behalf of the Plan as a whole and seeks remedies under § 1109 to protect the entire Plan.

41.     Plaintiff has standing to bring claims on behalf of holders of the Parnassus Fund (in addition to the Harbor Fund), because the alleged harms to holders of the Parnassus Fund can be traced to the same Bloomberg conduct: the imprudent process violative of ERISA that the Defendants used to select, monitor, and retain each and every one of the investment options in the Plan. This singular conduct with respect to the investment options as a whole harmed each of the holders of the Harbor Fund and Parnassus Fund, as discussed in this First Amended Complaint.

42.     Specifically, Plaintiff suffered individual injury in the form of diminished retirement savings by investing in the Harbor Fund during the Class Period. Defendants caused this diminishment in Plaintiff's retirement savings by failing to (a) evaluate and monitor the Plan's investments on an ongoing basis; (b) eliminate imprudent investments; (c) take all necessary steps to ensure the Plan's assets were invested properly; and (d) investigate, evaluate, and monitor investments. These failures directly resulted in a Plan that included the Challenged Funds—both of which suffered poor performance for well over a decade and both of which Defendants failed to remove within a reasonable time despite historical underperformance relative to their relevant benchmarks and Comparator Funds. These were general practices that affected all Plan participants during the Class Period, including Plaintiff, who suffered individualized harm in the form of diminished retirement savings as a result of these general practices.

## V.     ERISA'S FIDUCIARY STANDARDS

### A.     Overview of ERISA's Fiduciary Duty of Prudence

43.     ERISA's fiduciary duties are the highest known to the law. ERISA's duty of prudence requires fiduciaries to discharge their responsibilities with the care, skill, and diligence

that a prudent person acting in a like capacity and familiar with such matters would use. Accordingly, even in a defined contribution plan in which participants choose their investments, plan fiduciaries must conduct their own independent evaluation to determine which investments may be prudently included in the plan's menu of options.

44.     As part of its fiduciary duty, Bloomberg has a continuing duty to monitor plan investments and remove imprudent ones. That continuing duty exists separate and apart from the fiduciary's duty to exercise prudence in selecting investments. A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones. If an investment is imprudent, Bloomberg must dispose of it within a reasonable time.

## B.        Fiduciary Liability Under ERISA

45.     Under ERISA § 409, 29 U.S.C. § 1109, fiduciaries to the Plan are personally liable to make good to the Plan any harm caused by their breaches of fiduciary duty. ERISA § 409(a), 29 U.S.C. § 1109(a), provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

46.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), is the enforcement mechanism of ERISA § 409, 29 U.S.C. § 1109. It enables participants and beneficiaries to bring civil actions to seek appropriate relief under ERISA § 409, 29 U.S.C. § 1109.

10

## C.    Co-Fiduciary Liability Under ERISA

47.    ERISA provides for co-fiduciary liability where a fiduciary knowingly participates in, or knowingly fails to cure, a breach by another fiduciary. Specifically, under ERISA § 405(a), 29 U.S.C. § 1105(a), a fiduciary shall be liable for a breach of fiduciary duty by a co-fiduciary:

1. if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

2. if by his failure to comply with [29 U.S.C. § 1104(a)(1)] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

3. if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

## VI.    THE PLAN

48.    The Bloomberg L.P. 401(k) Plan is a profit-sharing plan as described in Section 401(k) of the Internal Revenue Code, I.R.C. § 401(k) (1986), and is subject to the provisions of ERISA. The Plan is established and maintained under a written document in accordance with ERISA § 402(a), 29 U.S.C. § 1102(a). Bloomberg is the sponsor of the Plan.

49.    During the Class Period, the Plan provided for retirement income for approximately 20,000 Bloomberg employees, former employees, and their beneficiaries (the "Plan participants"). Defendants exclusively controlled the selection and retention of the Plan's investment options.

50.    Participants can only invest their retirement savings in the investment options that the Bloomberg Defendants select.

51.    As of December 31, 2024, Plan participants had invested over $5.7 billion in the Plan. Over $497 million in the Plan—or about 9%—was invested in the Challenged Funds.

11

## VII.    OVERVIEW OF INVESTMENT FUNDS

52.    An investment fund is a pool of money contributed by a group of investors. The investment adviser takes this pool of money and invests in different stocks on behalf of all investors in the fund. The investment adviser manages the investments in each fund in accordance with the investment objectives and strategies set forth in each fund's investment guidelines. For providing this service, the investment adviser charges the funds an investment advisory fee.

### A.    Active v. Passive Management

53.    The Harbor Fund and the Parnassus Fund are actively managed funds—that is, funds that rely on the professional judgment of their investment advisers to make decisions about the funds' portfolios of investments. For the Harbor Fund, a portfolio team decides the industries in which the fund will allocate assets, as well as what stocks to buy and sell and when. The Harbor Fund pays Harbor Capital Advisors, Inc. a fee for these services—a fee which the Harbor Fund passes on to investors, including the Plan's participants. Harbor's primary focus should be to outperform the Fund's stated benchmark, the Russell Index. Indeed, Harbor Capital Advisors charges fees for active management on the premise that the Harbor Fund can beat the Russell Index.

54.    Likewise, the Parnassus Fund is managed by a portfolio team that decides the industries in which the fund will allocate assets, as well as what stocks to buy and sell and when. The Parnassus Fund pays Parnassus Investments LLC a fee for these services—a fee which the Parnassus Fund passes on to investors, including the Plan's participants. Parnassus's primary focus should be to outperform the stated benchmark: the S&P. Indeed, Parnassus charges fees for active management on the premise that the Parnassus Fund can beat the S&P.

12

55.    Active managers run the risk that their methods and analyses, including models, tools, and data, may be flawed or incorrect and may not achieve the fund's aim. Such errors could cause the fund to lag its benchmark. Given that active managers are paid to beat their benchmark, chronic underperformance is a red flag that suggests investors are not getting their money's worth and should consider other investment options.

56.    Investment research and analysis typically drive the investment decisions of actively managed funds. Factors that an investment adviser may consider include, but are not limited to, market trends, a company's financial condition, perceived risk of investing in the company, industry and sector outlook, and the underlying stocks' performances in various market conditions. Based on their respective professional judgment, one investment adviser may like issuers who focus on financial services while another may like media stocks, while a third may like investments in technology companies.

57.    Without variations between portfolio holdings, all large cap stock funds would own identical investment portfolios and have nearly identical investment performance. Active management offers investors the opportunity to earn superior returns through the astute selection of investments. Astute selection typically drives superior investment performance over time and distinguishes the better-performing funds from the underperforming ones. Bad asset allocation and poor investment selection generally drive long-term underperformance.

58.    Most actively managed large cap funds consistently underperform their benchmarks. Therefore, it is imperative for fiduciaries to carefully monitor their plan's actively managed funds. Keeping an actively managed fund that underperforms its benchmark over three-year, five-year, or ten-year periods is imprudent from a fiduciary perspective.

59.     Unlike actively managed funds, passively managed funds simply seek to replicate the holdings and investment performance of a designated benchmark index.

60.     The portfolio team of a passively managed fund makes few, if any, investment decisions besides constructing a portfolio that tracks that of the benchmark. Therefore, a passively managed fund typically will perform at or near the investment performance of its benchmark. Compared to actively managed funds, the fees for passively managed funds are significantly lower.

61.     When an actively managed fund persistently underperforms its benchmark, a passively managed fund, or index fund, is a viable option for prudent plan fiduciaries to consider. As Warren Buffett astutely observed, "If you invested in a very low-cost index fund—where you don't put the money in at one time, but average in over 10 years—you'll do better than 90% of people who start investing at the same time." Vanguard and BlackRock are well-known leaders in the passively managed fund space.

**B.      Investment Aims of Large Cap Funds**

62.     The stocks of the biggest companies comprise a substantial portion of a large cap fund's portfolio. Typically, the investment aims of a large cap fund are to seek long-term growth of capital. How they seek that long-term growth varies, depending on the fund's investment style.

63.     The Harbor Fund is a large cap fund that employs a growth style. Funds with a growth style invest in stocks of companies that are projected to grow faster than other stocks. Growth is defined based on fast growth (high growth rates for earnings, sales, book value, and cash flow), high valuations (high price ratios), and low dividend yields.

64.     The Parnassus Fund is a large cap fund that employs a core style, which is a blend of growth-oriented stocks and value-oriented stocks. Value-oriented stocks are defined based on

14

high intrinsic value (low price relative to earnings, sales, book value) low valuations (low price ratios), and high dividend yields.

65.     The principal aim of large cap core funds is to provide investors with a mix of both income from dividends as well as long-term growth of capital.

**C.        Investment Risks of Large Cap Funds**

66.     The principal categories of risks for the Harbor Fund and the Parnassus Fund include market risk, issuer risk, and the risk of investing in growth-oriented stocks.

67.     Market risk is the chance that stock prices overall will decline. Stock markets tend to move in cycles, with periods of rising prices and periods of falling prices, so each fund is subject to the risk that the market as a whole will fall.

68.     Issuer risk is the chance that prices of, and the income generated by, individual securities of companies held by the fund may decline in response to various factors directly related to the issuers of such securities, including reduced demand for an issuer's goods or services, poor management performance, major litigation, investigations, or other controversies related to the issuer.

69.     Investing in growth-oriented stocks carries additional risk. Such stocks (*e.g.*, NVIDIA) may experience larger price swings and greater potential for loss than other types of stocks, such as those that are considered value-oriented, or those that historically have paid continuous dividends (*e.g.*, Bristol Myers).

D.     **Potential Investment Rewards of Actively Managed Large Cap Funds: Fiduciaries Select Benchmarks to Evaluate Achievement of Potential Rewards**

70.     Investments are judged by their investment performance. Typically, investors want a portfolio that consists of investments that meet or exceed their respective benchmarks. Whether an investment performs well relative to its benchmark is concrete rather than abstract.

71.     For an actively managed investment fund, the potential reward is that the fund will deliver positive investment returns that exceed those of its benchmark. Investment advisers select benchmarks that they consider to be representative of the fund's primary investment strategy, *i.e.*, they have similar aims, risks, and potential rewards as those of their fund.

72.     Harbor Capital publishes comprehensive information about the Harbor Fund that investors can read. This is commonly referred to as the "Fund Fact Sheet." The Harbor Fund's Fact Sheet identifies the Russell Index as the Harbor Fund's sole benchmark.

73.     Parnassus also publishes a Fund Fact Sheet. It identifies the S&P as the Parnassus Fund's sole benchmark.

## VIII.   THE HARBOR FUND AND ITS COMPARATORS

A.     **The Harbor Fund**

74.     The Harbor Fund's aim is to seek long-term growth of capital.

75.     The Harbor Fund pursues its aim by investing primarily in equity securities, emphasizing common and preferred stocks of U.S. companies with market capitalizations of at least $1 billion at the time of purchase and that are considered to have above-average prospects for growth.

76.     Currently, approximately 93% of the Harbor Fund's portfolio is invested in large cap stocks. Among its top holdings are stocks in NVIDIA, Microsoft, and Broadcom.

77.     The Harbor Fund's potential rewards are that it will generate positive investment returns that outperform the Russell Index.

78.     The Harbor Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

79.     By investing a significant portion of its assets in stocks, including growth-oriented stocks, the Harbor Fund is considered to have a very aggressive risk profile.

80.     The Harbor Fund is not the only large cap growth fund on the market with the same mix of aims, risks, and potential rewards as described above. As shown below, numerous substantially similar funds have existed throughout the Class Period and before.

**B.      Comparator 1: Fidelity Blue Chip Growth Fund**

81.     The Fidelity Blue Chip Growth Fund (the "Fidelity Fund") has similar aims, risks, and potential rewards to those of the Harbor Fund.

82.     Like the Harbor Fund, the Fidelity Fund is an actively managed large cap growth fund.

83.     The Fidelity Fund's aim is to seek capital appreciation. The Fidelity Fund pursues its aim by investing primarily in common stocks of companies that have above-average growth potential.

84.     Currently, approximately 85% of the Fidelity Fund's portfolio is invested in large cap stocks. Like the Harbor Fund, the Fidelity Fund's top holdings include equities in NVIDIA, Microsoft, and Broadcom.

85.     The Fidelity Fund's potential rewards are that the fund will generate positive investment returns that outperform the Russell Index. Its principal risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks. By investing a

significant portion of its assets in stocks, including growth-oriented stocks, the Fidelity Fund, like the Harbor Fund, is considered to have a very aggressive risk profile.

86.     The aims, risks, and potential rewards of the Fidelity Fund are similar to those of the Harbor Fund given the similarities in the two funds' investment strategies, the types of stocks the two funds own, and their very aggressive risk profiles. Moreover, both funds are actively managed investment options that seek to outperform relative to the same benchmark, the Russell Index. These characteristics make the Fidelity Fund a meaningful comparator to the Harbor Fund.

**C.     Comparator 2: JPMorgan Large Cap Growth Fund**

87.     The JPMorgan Large Cap Growth Fund (the "JPMorgan Fund") has similar aims, risks, and potential rewards to those of the Harbor Fund.

88.     Like the Harbor Fund, the JPMorgan Fund is an actively managed large cap growth fund.

89.     The JPMorgan Fund's aim is to seek long-term capital appreciation. The JPMorgan Fund pursues its aim by investing primarily in equity securities of large capitalization companies whose market capitalizations are similar to those within the universe of the Russell Index.

90.     Like the Harbor Fund, the JPMorgan Fund's Fact Sheet identifies the Russell Index as its benchmark.

91.     Currently, approximately 90% of the JPMorgan Fund's portfolio is invested in large cap stocks. Like the Harbor Fund, the JPMorgan Fund's top holdings include equities in NVIDIA, Microsoft, and Broadcom.

92.     The JPMorgan Fund's potential rewards are that the fund will generate positive investment returns that outperform the Russell Index. Its principal risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks. By investing a

significant portion of its assets in stocks, including growth-oriented stocks, the JPMorgan Fund, like the Harbor Fund, is considered to have a very aggressive risk profile.

93.     The aims, risks, and potential rewards of the JPMorgan Fund are similar to those of the Harbor Fund given the similarities in the two funds' investment strategies, the types of stocks the two funds own, and their very aggressive risk profiles. Moreover, both funds are actively managed investment options that seek to outperform relative to the same benchmark, the Russell Index. These characteristics make the JPMorgan Fund a meaningful comparator to the Harbor Fund.

**D.        Comparator 3: Vanguard Russell 1000 Growth Index Fund**

94.     The Vanguard Russell 1000 Growth Index Fund (the "Vanguard Fund") is a passively managed index fund that seeks to track the performance the Russell Index. The Vanguard Fund attempts to replicate the Russell Index by investing its assets in the stocks that make up the Russell Index.

95.     Currently, approximately 87% of the Vanguard Fund's portfolio is invested in large cap stocks. Like the Harbor Fund, the Vanguard Fund's top holdings include stocks in NVIDIA, Microsoft, and Broadcom.

96.     The Vanguard Fund's potential rewards are that it will generate investment returns in line with the Russell Index. The Vanguard Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks. By investing a significant portion of its assets in stocks, including growth-oriented stocks, the Vanguard Fund, like the Harbor Fund, is considered to have a very aggressive risk profile.

97.     The aims, risks, and potential rewards of the Vanguard Fund are similar to those of the Harbor Fund given the two funds' investment strategies, the types of stocks the two funds own,

19

and their very aggressive risk profiles. This makes the Vanguard Fund a meaningful comparator for the Harbor Fund.

98.     There is a notable difference in the fees charged by the Harbor Fund compared to the Vanguard Fund. As shown in the table below, the fees of the Harbor Fund are nearly six-times the fees of the Vanguard Fund, yet, as illustrated in Section X.A below, the Vanguard Fund has significantly superior investment performance.

| Fund Name | Fees |
|---|---|
| Harbor Capital Appreciation CIT Class 4 (Plan option 2020-2022) | 4l bps |
| Harbor Capital Appreciation CIT Class R (Plan option post-2022) | 35 bps |
| The Vanguard Russell 1000 Growth Index | 6 bps |

**E.     Comparator 4: BlackRock Russell 1000® Growth Fund**

99.     The BlackRock Russell 1000® Growth Fund (the "BlackRock Fund") is also a passively managed index fund that seeks to track the results of the Russell Index by investing its assets in the stocks that make up the Russell Index.

100.    Currently, approximately 87% of the BlackRock Fund's portfolio is invested in large cap stocks. Like the Harbor Fund, the BlackRock Fund's top holdings include equities in NVIDIA, Microsoft, and Broadcom.

101.    The BlackRock Fund's potential rewards are that it will generate investment returns in line with the Russell Index. The BlackRock Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks. By investing a significant

portion of its assets in stocks, including growth-oriented stocks, the BlackRock Fund, like the Harbor Fund, is considered to have a very aggressive risk profile.

102. The aims, risks, and potential rewards of the BlackRock Fund are similar to those of the Harbor Fund given the two funds' investment strategies, the types of stocks the two funds own, and their very aggressive risk profiles. This makes the BlackRock Fund a meaningful comparator for the Harbor Fund.

103. Similar to the Vanguard Fund comparison, there is a notable difference in the fees charged by the Harbor Fund compared to the BlackRock Fund. Based on information and belief, the fees of the Harbor Fund are nearly six-times the fees of the BlackRock Fund, yet, as illustrated in Section X.A below, the BlackRock Fund has significantly superior investment performance.

**F.      Comparator 5: Russell 1000 Growth Index**

104. In the Harbor Fund's Fact Sheets, Harbor Capital discloses to the investing public that the Russell Index is the Harbor Fund's sole benchmark. Therefore, the investment adviser of the Harbor Fund—the entity most knowledgeable about the fund—necessarily concludes that the Fund and Russell Index share similar aims, risks, and rewards.

105. The Russell Index measures the performance of the large cap growth segment of the U.S. stock market. It includes those Russell Index companies that are similar to the companies included in the Harbor Fund—those with large capitalizations, relatively higher price-to-book ratios, higher forecast medium-term growth, and higher sales-per-share historical growth (*i.e.*, growth companies).

106. Like the Harbor Fund, the Russell Index's top holdings include equities in NVIDIA, Microsoft, and Broadcom.

107. Investors can own the Russell Index by investing in exchange-traded funds (ETFs) that own all or substantially all the stocks represented in the Russell 1000 Growth Index. Multiple reputable investment advisers, such as Vanguard, offer these ETFs.

108. By virtue of the similarities in their respective holdings and market capitalizations, the Russell and the Harbor Fund share similar aims, rewards, and levels of risk, including market risk and issuer risk. This makes the Russell Index a meaningful benchmark for the Harbor Fund.

## IX.   THE PARNASSUS FUND AND ITS COMPARATORS

### A.   The Parnassus Fund

109. The Parnassus Fund is an actively managed large cap core fund. Its aim is total return comprised of both income from dividends and long-term capital appreciation.

110. The Parnassus Fund pursues its aim by investing primarily in a diversified portfolio of U.S. equity securities.

111. Currently, approximately 87% of the Parnassus Fund's portfolio is invested in large cap stocks. Among the Parnassus Fund's top holdings are Microsoft, Apple, Broadcom, and NVIDIA.

112. The Parnassus Fund's potential rewards are that it will generate positive investment returns that outperform the S&P.

113. The Parnassus Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

114. By investing a significant portion of its assets in stocks, including both growth and value-oriented stocks, the Parnassus Fund is considered to have an aggressive risk profile.

115.    The Parnassus Fund is not the only large cap core fund on the market with the same mix of aims, risks, and potential rewards as described above. As set forth below, numerous substantially similar funds have existed throughout the Class Period.

**B.        Comparator 1: T. Rowe Price U.S. Equity Research Fund**

116.    Like the Parnassus Fund, the T. Rowe Price U.S. Equity Research Fund (the "T. Rowe Price Fund") is an actively managed large cap core fund.

117.    The T. Rowe Price Fund is managed by T. Rowe Price Associates, Inc.

118.    The T. Rowe Price Fund has similar aims, risks, and potential rewards to those of the Parnassus Fund.

119.    The T. Rowe Price Fund's aim is to seek long-term capital growth by investing primarily in large cap U.S. common stocks.

120.    Like the Parnassus Fund, the T. Rowe Price Fund identifies the S&P as one of its benchmarks.

121.    Currently, approximately 81% of the T. Rowe Price Fund's portfolio is invested in large cap stocks. Like the Parnassus Fund, the T. Rowe Price Fund's top holdings include Microsoft, Apple, Broadcom, and JPMorgan Chase.

122.    The T. Rowe Price Fund's potential rewards are that the fund will generate positive investment returns that outperform the S&P 500.

123.    The T. Rowe Price Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

124.    By investing a significant portion of its assets in stocks, including growth-oriented stocks and value-oriented stocks, the T. Rowe Price Fund, like the Parnassus Fund, is considered to have an aggressive risk profile.

125.    The aims, risks, and potential rewards of the T. Rowe Price Fund are similar to those of the Parnassus Fund given the similarities in the two funds' investment strategies, the types of stocks the two funds own, and their aggressive risk profiles. Moreover, both funds are actively managed investment options that seek to outperform the same benchmark, the S&P. These characteristics make the T. Rowe Price Fund a meaningful comparator to the Parnassus Fund.

**C.        Comparator 2: Putnam U.S. Research Fund**

126.    Like the Parnassus Fund, the Putnam U.S. Research Fund (the "Putnam Fund") is an actively managed large cap core fund.

127.    The Putnam Fund is managed by Putnam Investment Management, LLC.

128.    The Putnam Fund has similar aims, risks, and potential rewards to those of the Parnassus Fund.

129.    The aim of the Putnam Fund is capital appreciation. Under normal circumstances, the fund will invest at least 80% of its net assets in equity securities of companies located in the United States.

130.    Like the Parnassus Fund, the Putnam Fund identifies the S&P 500 Index as one of its benchmarks.

131.    Currently, approximately 84% of the Putnam Fund's portfolio is invested in large cap stocks. Like the Parnassus Fund, Putnam's top holdings include Microsoft, Apple, Mastercard, and Broadcom.

132.    The Putnam Fund's potential rewards are that the fund will generate positive investment returns that outperform its S&P.

133.    The Putnam Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

24

134. By investing a significant portion of its assets in stocks, including both growth and value-oriented stocks, the Putnam Fund, like the Parnassus Fund, is considered to have an aggressive risk profile.

135. The aims, risks, and potential rewards of the Putnam Fund are similar to those of the Parnassus Fund given the similarities in the two funds' investment strategies, the types of stocks the two funds own, and their aggressive risk profiles. Moreover, both funds are actively managed investment options that seek to outperform the same benchmark, the S&P. These facts make the Putnam Fund a meaningful comparator to the Parnassus Fund.

**D.    Comparator 3: Vanguard 500 Index Fund**

136. The Vanguard 500 Index Fund (the "Vanguard Fund") is a passively managed index fund that seeks to track the performance of the S&P. The Vanguard Fund attempts to replicate the S&P 500 Index by investing its assets in the stocks that make up the S&P.

137. Currently, approximately 81% of the Vanguard Fund's portfolio is invested in large cap stocks. Like the Parnassus Fund, Vanguard's top holdings include Apple, Broadcom, and Microsoft.

138. The Vanguard Fund's potential rewards are that it will generate investment returns in line with the S&P 500 Index.

139. The Vanguard Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks.

140. By investing a significant portion of its assets in stocks, including both growth and value-oriented stocks, the Vanguard Fund, like the Parnassus Fund, is considered to have an aggressive risk profile.

141.    By virtue of the similarities in the two funds' investment strategies, the types of stocks the two funds own, and aggressive risk profiles, the Vanguard Fund and the Parnassus Fund share similar aims, rewards, and levels of risk. This makes the Vanguard Fund a meaningful Comparator for the Parnassus Fund.

142.    A notable difference between the Parnassus Fund and the Vanguard Fund is the fees each charges. As shown in the table below, the total net fees and expenses of the Vanguard Fund are significantly less than those of the Parnassus Fund, and as illustrated in Section X.B below, the Vanguard Fund handily outperforms the Parnassus Fund.

| Fund Name | Fees |
|---|---|
| Parnassus Sustainable Core Equity CIT 1 | 0.49% |
| Vanguard 500 Index Admiral | 0.04% |

**E.      Comparator 4: Fidelity 500 Index Fund**

143.    The Fidelity 500 Index Fund (the "Fidelity Fund") is a passively managed index fund that seeks to track the performance of the S&P 500 by investing its assets in the stocks that make up the S&P.

144.    Currently, approximately 81% of the Fidelity Fund's portfolio is invested in large cap stocks.

145.    Like the Parnassus Fund, the Fidelity Fund's top holdings include Apple, Broadcom, and Microsoft.

146.    The Fidelity Fund's potential rewards are that it will generate investment returns in line with the S&P.

147. The Fidelity Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

148. By investing a significant portion of its assets in stocks, including both growth and value-oriented stocks, the Fidelity Fund, like the Parnassus Fund, is considered to have an aggressive risk profile.

149. By virtue of the similarities in their investment strategies, the types of stocks the two funds hold, and their aggressive risk profiles, the Fidelity Fund is a meaningful comparator for the Parnassus Fund.

150. A notable difference between the Parnassus Fund and the Fidelity Fund is the fees each charges. As shown in the table below, the net fees and expenses of the Fidelity Fund are significantly less than those of the Parnassus Fund, and as illustrated in Section X.B below, the Fidelity Fund handily outperforms the Parnassus Fund.

| Fund Name | Fees |
|---|---|
| Parnassus Dividend Growth Fund I | 0.49% |
| Fidelity 500 Index | 0.15% |

**F.      Comparator 5: S&P 500 Index**

151. Parnassus has disclosed to the investing public that the Parnassus Fund is benchmarked to the S&P. Therefore, the investment adviser of the Parnassus Fund necessarily concluded that the S&P shares similar aims, risks, and rewards.

152. The S&P measures the performance of the large cap segment of the U.S. stock market. It includes 500 leading U.S. companies, the same type of stocks that the Parnassus Fund holds. Like the Parnassus Fund, the S&P's top holdings include NVIDIA, Apple, and Microsoft.

153. By virtue of the similarities in their respective market capitalizations and holdings, the S&P and the Parnassus Fund share similar aims, rewards, and levels of risk, including market risk and issuer risk. This makes the S&P a meaningful benchmark for the Parnassus Fund.

## X. THE CHALLENGED FUNDS UNDERPERFORMED THEIR BENCHMARKS AND COMPARATOR FUNDS FOR OVER A DECADE

154. Poor investment performance can harm a participant's retirement savings. A 35-year-old participant with $100,000 in retirement savings will see that grow to $761,000 by retirement age, assuming a 7% return and no further contributions or withdrawals. However, that same $100,000 with a lower investment return of 6.50% will grow to only $661,000. An investment option that underperforms by a mere half a percent has a material impact on a participant's retirement savings.

155. Investors commonly assess the quality of a fund based on its preceding one-year, three-year, five-year, and ten-year investment performance.

156. For a prudent fiduciary, investment options that, on average, underperform their benchmarks over trailing three- or five-year periods are generally candidates for removal. Such guidelines are often outlined in a plan's investment policy statement.

157. The Department of Labor has stated: ". . . because every investment necessarily causes a plan to forgo other investment opportunities, an investment will not be prudent if it would be expected to provide a plan with a lower rate of return than available alternative investments with commensurate degrees of risk or is riskier than alternative available investments with commensurate rates of return." The Department of Labor has maintained this position on prudence for over 30 years. Interpretive Bulletin 94-1 (June 23, 1994).

28

158.    The long-term underperformance illustrated in the tables below raises a plausible inference that both the Harbor Fund and the Parnassus Fund could not be expected to provide higher investment returns than the Comparator Funds that had the same risk profiles. Therefore, the Harbor Fund and Parnassus Fund were not prudent investments and their retention in the Plan was the product of an imprudent process.

A.    **The Harbor Fund**

159.    **Table 1.a** below demonstrates the underperformance of the Harbor Fund compared to the Russell Index and to the Comparator Funds for the ten-year period from January 1, 2010 through December 31, 2019.

160.    Between 2010 and 2019, the Harbor Fund's underperformance cost the Plan and its participants between approximately $18 million and $40 million in retirement savings.

161.    During that ten-year stretch, the Harbor Fund underperformed both the Russell Index and the other Comparator Funds at the end of each of the one-year, three-year, five-year, seven-year, and ten-year periods. The Defendants would have seen in this underperformance in real time at the end of 2010, 2012, 2014, 2016, and 2019.

**Table 1.a**
**January 1, 2010—December 31, 2019**

| Funds | Three Year Performance | Five Year Performance | Seven Year Performance | Ten Year Performance | | |
|---|---|---|---|---|---|---|
| | Cumulative return 01/01/2010 - 12/31/2012 | Cumulative Return 01/01/2010 - 12/31/2014 | Cumulative Return 01/01/2010 - 12/31/2016 | Cumulative Return 01/01/2010 - 12/31/2019 | Annualized Performance 01/01/2010 - 12/31/2019 | Growth of $79 Million |
| Harbor Capital Institutional Fund[5] | 29.91% | 96.59% | 115.87% | 288.93% | 14.55% | $306.1 million |

[5] In and around 2021, the Plan switched from offering the Harbor Capital Appreciation Mutual Fund Institutional share class to the Harbor Capital Appreciation Collective Investment Trust

| Funds | Three Year Performance | Five Year Performance | Seven Year Performance | Ten Year Performance | | |
|---|---|---|---|---|---|---|
| | Cumulative return 01/01/2010 - 12/31/2012 | Cumulative Return 01/01/2010 - 12/31/2014 | Cumulative Return 01/01/2010 - 12/31/2016 | Cumulative Return 01/01/2010 - 12/31/2019 | Annualized Performance 01/01/2010 - 12/31/2019 | Growth of $79 Million |
| Russell 1000 Growth TR | 38.07% | 108.36% | 135.74% | 312.34% | 15.22% | $324.5 million |
| +/- Harbor Capital | -8.16% | -11.77% | -19.87% | -23.41% | -0.67% | -$18.4 million |
| Fidelity Blue Chip Growth K | 37.70% | 121.24% | 139.43% | 340.63% | 15.99% | $346.7 million |
| +/- Harbor Capital | -7.79% | -24.65% | -23.56% | -51.70% | -1.44% | -$40.6 million |
| JPMorgan Large Cap Growth R6 | 42.25% | 110.29% | 123.04% | 332.61% | 15.77% | $340.4 million |
| +/- Harbor Capital | -12.34% | -13.70% | -7.17% | -43.68% | -1.22% | -$34.3 million |
| The Vanguard Russell 1000 Growth Index | 38.19% | 108.62% | 136.10% | 313.11% | 15.24% | $325.1 million |
| +/- Harbor Capital | -8.28% | -12.03% | -20.23% | -24.18% | -0.69% | -$19.0 million |
| BlackRock Russell 1000 Growth Fund F | 38.59% | 109.27% | 136.97% | 314.72% | 15.29% | $326.3 million |
| +/- Harbor Capital | -8.68% | -12.68% | -21.10% | -25.79% | -0.74% | -$20.2 million |

Underperformed by < 10%
Underperformed by ≥ 10%
Underperformed by ≥ 20%
Underperformed by ≥ 30%

---

(CIT) Class 4. The Plan switched its offering again in and around 2023, when it changed to the Class R of the Harbor Capital Appreciation CIT. The annual and cumulative performance calculations shown in **Tables 1.b** and **1.c** use the Harbor Capital Appreciation Institutional mutual fund performance data for 2020 and the Harbor Capital Appreciation CIT Class 4 and Class R for 2021 through 2022 and 2023 through the present, respectively.

162.    Annual underperformance of 0.67% relative to the Russell is significant. For a 35-year-old participant with $100,000 savings, this underperformance deprived the participant of $24,000 of retirement savings during this stretch and, if it continues, could rob the participant in excess of $130,000 of retirement savings over the course of their 30-year working career.

163.    Relative to the Fidelity Blue Chip Growth Fund, the 1.44% in annual underperformance cost the participant $52,000 in retirement savings and would cost close to $240,000 over a 30-year working career.

164.    A prudent fiduciary would have realized that the Harbor Fund did not warrant the fees that it was charging for active management. Even though the Harbor Fund failed to beat its Russell benchmark, its fees were nearly six times the Vanguard Fund's fees. Warren Buffett's sage advice on index funds outlined in ¶ 61 above would have been a prudent course of action.

165.    The Fidelity Fund and the JPMorgan Fund did not suffer the same ill fate and performed relatively well throughout this period. Ostensibly, their portfolio management teams were better aware of the investment opportunities and willing to seize them.

166.    Yet the Defendants failed to remove the Habor Fund. And the Harbor Fund continued to perform poorly throughout the Class Period.

167.    **Table 1.b**, below illustrates the worsening underperformance of the Harbor Fund from January 1, 2020 through March 31, 2026, on an annual and cumulative basis relative to the Russell and the Comparator Funds.

168.    The Harbor Fund underperformed the Russell in four of the six full years and through the first three months of 2026. Cumulatively, underperformance was over 24% relative to the Russell Index.

169.    Though the Harbor Fund had a unicorn year in 2020, in which it outperformed the Russell Index by nearly 16%, 2020 was but an isolated episode of good performance amidst a string of abysmal performance. No sooner did 2020 end than the Harbor Fund reverted to below benchmark performance, where it remains to this day.

**Table 1.b**
**January 1, 2020—March 31, 2026**

| Fund | Annualized Performance | | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|---|
| | **2020** | **2021** | **2022** | **2023** | **2024** | **2025** | **YTD** | |
| Harbor Capital Institutional Fund[6] | 54.43% | 15.79% | -37.39% | 53.44% | 31.08% | 14.74% | -10.80% | 130.46% |
| Russell 1000 Growth TR | 38.49% | 27.60% | -29.14% | 42.68% | 33.36% | 18.56% | -9.78% | 154.87% |
| *+/- Harbor Capital* | *15.94%* | *-11.81%* | *-8.25%* | *10.76%* | *-2.28%* | *-3.82%* | *-1.02%* | *-24.41%* |
| Fidelity Blue Chip Growth K | 62.38% | 22.81% | -38.40% | 55.76% | 39.80% | 19.99% | -7.10% | 198.15% |
| *+/- Harbor Capital* | *-7.95%* | *-7.02%* | *1.01%* | *-2.32%* | *-8.72%* | *-5.25%* | *-3.70%* | *-67.69%* |
| JPMorgan Large Cap Growth R6 | 56.42% | 18.79% | -25.21% | 34.95% | 34.17% | 14.40% | -8.48% | 163.44% |
| *+/- Harbor Capital* | *-1.99%* | *-3.00%* | *-12.18%* | *18.49%* | *-3.09%* | *0.34%* | *-2.32%* | *-32.98%* |
| The Vanguard Russell 1000 Growth Index | 38.50% | 27.61% | -29.14% | 42.74% | 33.35% | 18.56% | -9.78% | 155.02% |
| *+/- Harbor Capital* | *15.93%* | *-11.82%* | *-8.25%* | *10.70%* | *-2.27%* | *-3.82%* | *-1.02%* | *-24.56%* |

---

[6] In and around 2021, the Plan switched from offering the Harbor Capital Appreciation Mutual Fund Institutional share class to the Harbor Capital Appreciation Collective Investment Trust (CIT) Class 4. The Plan switched its offering again in and around 2023, when it changed to the Class R of the Harbor Capital Appreciation CIT. The annual and cumulative performance calculations shown in **Tables 1.b** and **1.c** use the Harbor Capital Appreciation Institutional mutual fund performance data for 2020 and the Harbor Capital Appreciation CIT Class 4 and Class R for 2021 through 2022 and 2023 through the present, respectively.

| Fund | Annualized Performance | | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|---|
| | **2020** | **2021** | **2022** | **2023** | **2024** | **2025** | **YTD** | |
| BlackRock Russell 1000 Growth Fund F | 38.60% | 27.64% | -29.14% | 42.68% | 33.30% | 18.50% | -9.79% | 182.53% |
| +/- Harbor Capital | 15.83% | -11.85% | -8.25% | 10.76% | -2.22% | -3.76% | -1.01% | -52.07% |

| |
|---|
| Underperformed by < 2% |
| Underperformed by ≥ 2% |
| Underperformed by ≥ 4% |
| Underperformed by ≥ 6% |

170.    Together, **Tables 1.a** and **1.b** capture the depth and the breadth of the Harbor Fund's underperformance relative to the Russell Index that have persisted in the Plan for more than fifteen years.

171.    All the data presented in each of the above **Tables 1.a** and **1.b** was available in real time to the Bloomberg Defendants throughout the Class Period.

172.    Defendants' failure to remove the Harbor Fund cost Plan participants millions of dollars in retirement savings.

173.    On average, during the period from January 1, 2020, through December 31, 2024, the assets of the Harbor Fund were approximately $294 million.

174.    **Table 1.c** below compares the investment growth of $294 million invested in the Harbor Fund to the growth of $294 million invested in each of the Comparator Funds from January 1, 2020, through March 31, 2026. As the Table shows, participants would have substantially more dollars in retirement savings had Defendants replaced the Harbor Fund with any of the Comparator Funds.

33

**Table 1.c**
**January 1, 2020—March 31, 2026**

| Fund Name | Cumulative Performance | Annualized Performance | Growth of $294 Million |
|---|---|---|---|
| Harbor Capital Appreciation Institutional[7] | 130.46% | 14.29% | $677.6 million |
| Russell 1000 Growth TR | 154.87% | 16.15% | $749.3 million |
| *+/- Harbor Capital* | *-24.41%* | *-1.86%* | *-$71.8 million* |
| Fidelity Blue Chip Growth K | 198.15% | 19.10% | $876.5 million |
| *+/- Harbor Capital* | *-67.69%* | *-4.81%* | *-$199 million* |
| JPMorgan Large Cap Growth R6 | 163.44% | 16.76% | $774.5 million |
| *+/- Harbor Capital* | *-32.98%* | *-2.47%* | *-$97 million* |
| The Vanguard Russell 1000 Growth Index | 155.02% | 16.16% | $749.8 million |
| *+/- Harbor Capital* | *-24.56%* | *-1.87%* | *-$72.3 million* |
| BlackRock Russell 1000 Growth Fund F | 182.53% | 16.15% | $749.4 million |
| *+/- Harbor Capital* | *-52.07%* | *-1.86%* | *-$71.9 million* |

| |
|---|
| Underperformed by < 2% |
| Underperformed by ≥ 2% |
| Underperformed by ≥ 4% |
| Underperformed by ≥ 6% |

175.    The Comparator Funds listed in each of the above Tables are managed by reputable investment advisers with significant assets under management and are available to all large retirement plans, including Bloomberg's Plan. Bloomberg would not have had to scour the market to find them.

---

[7] In and around 2021, the Plan switched from offering the Harbor Capital Appreciation Mutual Fund Institutional share class to the Harbor Capital Appreciation Collective Investment Trust (CIT) Class 4. The Plan switched its offering again in and around 2023, when it changed to the Class R of the Harbor Capital Appreciation CIT. The annual and cumulative performance calculations shown in **Tables 1.b** and **1.c** use the Harbor Capital Appreciation Institutional mutual fund performance data for 2020 and the Harbor Capital Appreciation CIT Class 4 and Class R for 2021 through 2022 and 2023 through the present, respectively.

176.    Bloomberg needed to rid the Plan of the Harbor Fund in 2020 and offer a stellar investment option in its place.

177.    But nothing happened. No replacement option came. The Harbor Fund stayed. The Plan has suffered immensely.

178.    The poor performance alleged in the First Amended Complaint serves as a reminder of workers' vulnerability to every decision that Plan fiduciaries make. One misstep can alter the course of their lives. Here, the First Amended Complaint paints a bleak picture of a fiduciary process marred by fiduciary inaction in the face of widespread and long-lasting poor investment performance. It underscores the disconnect between those desperately trying to navigate an intricate maze of saving for retirement and the fiduciaries who are duty bound to help them navigate. The Defendants failed the Plan and its participants.

B.    **The Parnassus Fund**

179.    **Table 2.a** below demonstrates the underperformance of the Parnassus Fund compared to the S&P and Comparator Funds for the three-year, five-year period from January 1, 2015 through December 31, 2019. By late 2019, Defendants should have recognized that the Parnassus Fund was a terrible encumbrance to the Plan and should have been removed.

**Table 2.a**
**January 1, 2015—December 31, 2019**

| Funds | 3 Year Performance | | 5 Year Performance | |
|---|---|---|---|---|
| | Cumulative Return 01/01/2015 - 12/31/2017 | Annualized Performance 01/01/2015 - 12/31/2017 | Cumulative Return 01/01/2015 - 12/31/2019 | Annualized Performance 01/01/2015 - 12/31/2019 |
| Parnassus Core Equity Institutional | 28.76% | 8.79% | 68.72% | 11.03% |
| S&P 500 TR | 38.29% | 11.41% | 73.86% | 11.70% |
| +/- Parnassus | -9.53% | -2.62% | -5.14% | -0.67% |

35

| Funds | 3 Year Performance | | 5 Year Performance | |
|---|---|---|---|---|
| | Cumulative Return 01/01/2015 - 12/31/2017 | Annualized Performance 01/01/2015 - 12/31/2017 | Cumulative Return 01/01/2015 - 12/31/2019 | Annualized Performance 01/01/2015 - 12/31/2019 |
| T. Rowe Price U.S. Equity Research Z (PCUZX) | 40.34% | 11.96% | 77.28% | 12.13% |
| +/- Parnassus | -11.58% | -3.17% | -8.56% | -1.10% |
| Putnam U.S. Research R6 (PLJMX) | 34.91% | 10.50% | 71.96% | 11.45% |
| +/- Parnassus | -6.15% | -1.71% | -3.24% | -0.42% |
| Fidelity 500 Index (FXAIX) | 38.28% | 11.41% | 73.79% | 11.69% |
| +/- Parnassus | -9.52% | -2.62% | -5.07% | -0.66% |
| Vanguard 500 Index Admiral (VFIAX) | 38.17% | 11.38% | 73.59% | 11.66% |
| +/- Parnassus | -9.41% | -2.59% | -4.87% | -0.63% |

| |
|---|
| Underperformed by < 2% |
| Underperformed by ≥ 2% |
| Underperformed by ≥ 4% |
| Underperformed by ≥ 6% |

180.    Similar to the Harbor Fund, underperformance of 0.67% relative to the S&P is not insignificant. For a 35-year-old participant with $100,000 savings, this underperformance could rob the participant in excess of $130,000 of retirement savings over the course of their working years. Yet the Defendants failed to remove the Parnassus Fund. And the Parnassus Fund continued to perform poorly throughout the Class Period.

181.    **Table 2.b**, below, illustrates the underperformance of the Parnassus Fund from January 1, 2020 through March 31, 2026, on an annual and cumulative basis relative to the S&P and the Comparator Funds. Though the Parnassus Fund outperformed the S&P in one year and the actively managed Comparator Funds in two years, that outperformance was overshadowed by the multiple years in which the Parnassus Fund underperformed the S&P and the Comparator Funds.

The Parnassus Fund underperformed the S&P in five of the six years and cumulatively by over 22%.

**Table 2.b**
**January 1, 2020—March 31, 2026**

| Fund | Annualized Performance | | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|---|
| | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | YTD | |
| Parnassus Core Equity Institutional | 21.47% | 27.82% | -18.17% | 25.22% | 19.13% | 12.08% | -6.06% | 99.55% |
| S&P 500 TR | 18.40% | 28.71% | -18.11% | 26.29% | 25.02% | 17.88% | -4.33% | 122.18% |
| *+/- Parnassus* | *3.07%* | *-0.89%* | *-0.06%* | *-1.07%* | *-5.89%* | *-5.80%* | *-1.73%* | *-22.63%* |
| T. Rowe Price U.S. Equity Research Z (PCUZX) | 19.81% | 28.02% | -18.44% | 30.37% | 27.02% | 16.87% | -4.30% | 131.67% |
| *+/- Parnassus* | *1.66%* | *-0.20%* | *0.27%* | *-5.15%* | *-7.89%* | *-4.79%* | *-1.76%* | *-32.12%* |
| Putnam U.S. Research R6 (PLJMX) | 20.47% | 24.65% | -17.02% | 29.28% | 26.67% | 18.45% | -3.20% | 133.98% |
| *+/- Parnassus* | *1.00%* | *3.17%* | *-1.15%* | *-4.06%* | *-7.54%* | *-6.37%* | *-2.86%* | *-34.43%* |
| Fidelity 500 Index (FXAIX) | 18.40% | 28.69% | -18.13% | 26.29% | 25.00% | 17.86% | -4.34% | 122.03% |
| *+/- Parnassus* | *3.07%* | *-0.87%* | *-0.04%* | *-1.07%* | *-5.87%* | *-5.78%* | *-1.72%* | *-22.48%* |
| Vanguard 500 Index Admiral (VFIAX) | 18.37% | 28.66% | -18.15% | 26.24% | 24.97% | 17.83% | -4.34% | 121.64% |
| *+/- Parnassus* | *3.10%* | *-0.84%* | *-0.02%* | *-1.02%* | *-5.84%* | *-5.75%* | *-1.72%* | *-22.09%* |

| |
|---|
| Underperformed by < 2% |
| Underperformed by ≥ 2% |
| Underperformed by ≥ 4% |
| Underperformed by ≥ 6% |

182.    Together, **Tables 2.a** and **2.b** capture the depth and the breadth of the Parnassus Fund's underperformance relative to meaningful benchmarks that has persisted for more than fifteen years.

183. All the data presented in each of the above **Tables 2.a** and **2.b** was available in real time to the Bloomberg Defendants throughout the Class Period.

184. Defendants' failure to remove the Parnassus Fund cost Plan participants millions of dollars in retirement savings.

185. On average, during the period from January 1, 2020 through March 31, 2026, the assets of the Parnassus Fund were approximately $47 million. **Table 2.c** below compares the investment growth of $47 million invested in the Parnassus Fund to the growth of $47 million invested in each of the Comparator Funds from January 1, 2020, through March 31, 2026. As the Table shows, Participants would have substantially more dollars in retirement savings had Defendants replaced the Parnassus Fund with any of the Comparator Funds.

**Table 2.c**
**January 1, 2020—March 31, 2026**

| Fund Name | Cumulative Performance | Annualized Performance | Growth of $47 Million |
|---|---|---|---|
| Parnassus Core Equity Institutional | 99.55% | 11.69% | $93.8 million |
| S&P 500 TR | 122.18% | 13.61% | $104.4 million |
| *+/- Parnassus* | *-22.63%* | *-1.92%* | *-$10.6 million* |
| T. Rowe Price U.S. Equity Research Z (PCUZX) | 131.67% | 14.39% | $108.9 million |
| *+/- Parnassus* | *-32.12%* | *-2.70%* | *-$15.1 million* |
| Putnam U.S. Research R6 (PLJMX) | 133.98% | 14.57% | $110 million |
| *+/- Parnassus* | *-34.43%* | *-2.88%* | *-$16.2 million* |
| Fidelity 500 Index (FXAIX) | 122.03% | 13.61% | $104.4 million |
| *+/- Parnassus* | *-22.48%* | *-1.92%* | *-$10.6 million* |
| Vanguard 500 Index Admiral (VFIAX) | 121.64% | 13.58% | $104.2 million |
| *+/- Parnassus* | *-22.09%* | *-1.89%* | *-$10.4 million* |

| |
|---|
| Underperformed by < 2% |
| Underperformed by ≥ 2% |
| Underperformed by ≥ 4% |
| Underperformed by ≥ 6% |

186.    The Comparator Funds listed in each of the above Tables are managed by reputable investment advisers with significant assets under management and are available to all large retirement plans, including Bloomberg's Plan. Bloomberg would not have had to scour the market to find them.

187.    Like the Parnassus Fund, the Comparator Funds listed in each of the above Tables are managed by reputable investment advisers with significant assets under management and are available to all large retirement plans, including Bloomberg's Plan. Bloomberg would not have had to scour the market to find them.

188.    Defendants owed a fiduciary duty to remove the Parnassus Fund within a reasonable time after it manifested poor performance. Yet they retained the Parnassus Fund year after year, even though it failed to beat the S&P. The Plan has suffered immensely.

## XI.    CLASS ACTION ALLEGATIONS

189.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes any individual participant or beneficiary of the Plan to bring a representative action on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under ERISA § 409(a), 29 U.S.C. § 1109(a). Plaintiff brings this suit in a representative capacity on behalf of the Plan and its participants and beneficiaries pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a), seeking appropriate Plan-wide relief under ERISA § 409, 29 U.S.C § 1109, to protect the interests of the Plan.

190.    In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to a direct individual action on behalf of the Plan under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), Plaintiff seeks to certify this action as a class action on behalf of participants and beneficiaries of the Plan. Specifically, Plaintiff seeks to certify, and to be appointed as a representative of, the following class:

a. All participants and beneficiaries of the Plan who invested in either the Harbor Fund or the Parnassus Fund from January 29, 2020, through the date of judgment, excluding the Bloomberg Defendants, and any officers or employees of the Bloomberg Defendants with responsibility for the Plan's investment or administrative function.

191. This action meets the requirements of Federal Rule of Civil Procedure 23 ("Rule 23") and is certifiable as a class action for the following reasons:

a. The Class includes thousands of members and is so large that joinder of all its members is impracticable.

b. There are numerous questions of law and fact common to this Class because the Bloomberg Defendants owed the same fiduciary duties to the Plan and to all participants and beneficiaries and took a common course of actions and omissions as alleged herein as to the Plan, and not as to any individual participant, that affected all Class members through their participation in the Plan in the same way. Thus, questions of law and fact common to the Class include, without limitation, the following: (i) whether each of the Defendants are fiduciaries liable for the remedies provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (ii) whether the fiduciaries of the Plan breached their fiduciary duties to the Plan by employing an imprudent process for monitoring and evaluating Plan investment options; (iii) whether the fiduciaries of the Plan breached their fiduciary duties to the Plan by retaining an imprudent investment for an unreasonable amount of time; (iv) whether Plaintiff's claims of an imprudent process require similar inquiries and proof of the claims, and therefore implicate the same set of concerns, for all proposed members of the

Class; (iv) what are the losses to the Plan resulting from each breach of fiduciary duty; and (v) what Plan-wide equitable and other relief the Court should impose in light of the Bloomberg Defendants' breach of duties.

c. Plaintiff's claims are typical of the claims of the Class because Plaintiff was a Plan participant who invested in one or more of the Challenged Funds during the Class Period, and all participants in the Plan who invested in the Challenged Funds were harmed by the Bloomberg Defendants' misconduct.

d. Plaintiff is an adequate representative of the Class because he participated in the Plan during the Class Period, invested in one or more of the Challenged Funds during the Class Period, suffered diminished retirement savings as a result of investing in the Challenged Funds during the Class Period, has no interest that conflicts with the Class, is committed to the vigorous representation of the Class, and has engaged experienced and competent attorneys to represent the Class.

e. There are no substantial individualized questions of law or fact among Class members on the merits of this Action.

192. Prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Bloomberg Defendants with respect to the discharge of their fiduciary duties to the Plan and their personal liability to the Plan under ERISA § 409(a), 29 U.S.C. § 1109(a). Moreover, adjudications by individual participants and beneficiaries regarding the alleged breaches of fiduciary duties, and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries'

ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

193.    Additionally, or in the alternative, certification under Rule 23(b)(2) is appropriate because the Bloomberg Defendants have acted or refused to act on grounds that apply generally to the Class, so that declaratory relief is appropriate respecting the Class as a whole.

194.    Additionally, or in the alternative, this action may be certified as a class under Rule 23(b)(3). A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and it is impracticable for individual members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no Class member has an interest in individually controlling the prosecution of this matter, and Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action.

195.    Alternatively, this action may be certified as to particular issues under Rule 23(c)(4), including, but not limited to, the Defendants' liability to the Class for their allegedly imprudent conduct.

196.    Plaintiff's counsel will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Class under Rule 23(g).

197.    Alternatively, if, for any reason, Plaintiff's claims are unable to proceed as class claims under Rule 23, Plaintiff remains an adequate representative of the Plan and of all absent Plan Participants. In that case, Plaintiff may bring this action in his representative capacity as a Plan Participant pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). Given the nature of the allegations, no Plan Participant has an interest in individually controlling the prosecution of this

matter, and Plaintiff is aware of no particular difficulties likely to be encountered in the management of this matter as a representative action. If proceeding in a non-class representative action, Plaintiff will act to institute procedural protections as necessary to protect the interests of all absent Plan Participants.

## XII.    CAUSES OF ACTION

### COUNT I
**Breach of Duty of Prudence by Failing to Remove Imprudent Investments from the Plan Within a Reasonable Time**
**(Violation of ERISA § 404, 29 U.S.C. § 1104)**
**(Against All Defendants)**

198.    All allegations set forth in the First Amended Complaint are realleged and incorporated herein by reference.

199.    At all relevant times during the Class Period, the Bloomberg Defendants acted as fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A) by exercising authority and control with respect to the management of the Plan and its assets, and/or by rendering investment advice or by having authority or responsibility to render investment advice to the Plan, and/or were designated in the governing Plan documents as a named fiduciary within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a).

200.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires a plan fiduciary to act with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

201.    Thus, under ERISA, the Bloomberg Defendants are responsible for evaluating and monitoring the Plan's investments on an ongoing basis, eliminating imprudent investments, and taking all necessary steps to ensure the Plan's assets are invested prudently.

43

202. The Bloomberg Defendants breached their fiduciary duties through an imprudent process for investigating, evaluating, and monitoring investments. The faulty process resulted in a Plan that included both the Harbor Fund and the Parnassus Fund, both of which suffered poor performance for well over a decade. Bloomberg Defendants failed to remove both of these funds within a reasonable time despite historical underperformance relative to their relevant benchmarks and Comparator Funds.

203. By failing to replace the Harbor Fund with (a) a better-performing actively managed investment option, or (b) with a cheaper and better performing passively managed investment option, the Bloomberg Defendants failed to discharge their duties with the care, skill, prudence, and diligence that a prudent fiduciary acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

204. By failing to replace the Parnassus Fund with (a) a better-performing actively managed investment option, or (b) with a cheaper and better performing passively managed investment option, the Bloomberg Defendants failed to discharge their duties with the care, skill, prudence, and diligence that a prudent fiduciary acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

205. The Bloomberg Defendants' breach of fiduciary duty has substantially impaired the Plan's use, its value, and its investment performance for all Class members.

206. As a direct and proximate result of the Bloomberg Defendants' breaches of fiduciary duty, the Plan has suffered millions of dollars of damages which continue to accrue and for which the Bloomberg Defendants are jointly and severally liable pursuant to ERISA §§ 502(a)(2) and 409(a), 29 U.S.C. §§ 1132(a)(2) and 1109(a).

207. Each of the Bloomberg Defendants is liable to make good to the Plan any losses resulting from the aforementioned breaches and to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count. The Bloomberg Defendants are also subject to other Plan-wide equitable or remedial relief as appropriate, including an injunction and the removal of fiduciaries.

208. Each Bloomberg Defendant also participated in the breach of the other Bloomberg Defendants, knowing that such acts were a breach, and enabled the other Bloomberg Defendants to commit a breach by failing to lawfully discharge their own fiduciary duties. Each Bloomberg Defendant knew of the breach by the other Bloomberg Defendants yet failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Bloomberg Defendant is liable for any losses caused by the breach of its co-fiduciary duties under ERISA § 405(a), 29 U.S.C. § 1105(a).

**COUNT II**
**Failure to Monitor**
**(Against All Bloomberg Defendants)**

209. All allegations set forth in the First Amended Complaint are realleged and incorporated herein by reference.

210. The Bloomberg Defendants had a duty to monitor the performance of each party to whom they delegated any fiduciary responsibilities. A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of Plan assets, and must take prompt and effective action to protect the Plan and participants when they are not.

211. To the extent any Bloomberg Defendants' fiduciary responsibilities were delegated to another fiduciary, the Bloomberg Defendants' monitoring duty included an obligation to ensure

that any delegated tasks were being performed prudently, loyally, and in compliance with governing Plan documents.

212.    Instead, these monitoring Bloomberg Defendants enabled the other Bloomberg Defendants to employ an imprudent fiduciary process.

213.    The Bloomberg Defendants breached their fiduciary monitoring duties by, among other things:

    a.    failing to monitor their appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of their appointees' actions and omissions in violation of ERISA;

    b.    failing to monitor their appointees' fiduciary processes, which would have alerted a prudent fiduciary to the beaches of fiduciary duties described herein;

    c.    failing to ensure that the monitored fiduciaries had a prudent process in place for evaluating and ensuring that investment options were prudent; and

    d.    failing to remove appointees whose performance was inadequate in that they continued to allow investment options that were imprudent, excessively costly, poorly performing, and otherwise violated ERISA to remain in the Plan, to the detriment of Plan participants' retirement savings.

214.    Each fiduciary who delegated its fiduciary responsibilities likewise breached its fiduciary monitoring duty by, among other things:

    a.    failing to monitor their appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of their appointees' actions and omissions in violation of ERISA;

b.  failing to monitor their appointees' fiduciary processes, which would have alerted a prudent fiduciary to the beaches of fiduciary duties described herein;

c.  failing to ensure that the monitored fiduciaries had a prudent process in place for evaluating and ensuring that investment options were prudent; and

d.  failing to remove appointees whose performance was inadequate in that they continued to allow investment options that were imprudent, excessively costly, poorly performing, and otherwise violated ERISA to remain in the Plan, to the detriment of Plan participants' retirement savings.

215.  As a direct result of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses. Had Bloomberg and the other delegating fiduciaries discharged their fiduciary monitoring duties, the Plan would not have suffered these losses.

## XIII.  JURY TRIAL DEMANDED

216.  Pursuant to Federal Rule of Civil Procedure 38 and the Constitution of the United States, Plaintiff demands a trial by jury.

## XIV.  PRAYER FOR RELIEF

For these reasons, Plaintiff, on behalf of the Bloomberg Co. Retirement Plan, the Bloomberg L.P. 401(k) Plan, and all similarly situated Plan participants and beneficiaries, respectfully request that the Court:

i.  find and adjudge that the Bloomberg Defendants have breached their fiduciary duties, as described above;

ii.  find and adjudge that the Bloomberg Defendants are personally liable to make good to the Plan any losses to the Plan resulting from each breach of fiduciary duty, and

47

to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

iii.    order the Bloomberg Defendants to make good to the Plan the losses resulting from each breach of fiduciary duty and to restore to the Plan any profits resulting from each breach of fiduciary duty;

iv.    find and adjudge that the Bloomberg Defendants are liable to the Plan for appropriate Plan-wide equitable relief, including but not limited to restitution and disgorgement;

v.    determine the method by which Plan losses under ERISA § 409(a), 29 U.S.C. § 1109(a), should be calculated;

vi.    order the Bloomberg Defendants to provide all accountings necessary to determine the amounts Defendants must make good to the Plan under ERISA § 409(a), 29 U.S.C.§ 1109(a);

vii.    impose surcharge against the Bloomberg Defendants and in favor of the Plan all amounts involved in any transactions or fiduciary breaches that were in violation of ERISA;

viii.    certify the Class, appoint the Plaintiff as class representative, appoint Sanford Heisler Sharp McKnight, LLP as Class Counsel, and appoint Charles Field, Michael Palmer, and Alok Nadig from Sanford Heisler Sharp McKnight, LLP as lead counsel for the Class;

ix.    award to Plaintiff and the Class their attorneys' fees and costs under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

x.    order the Bloomberg Defendants to pay interest to the extent allowed by law; and

48

grant such other equitable or remedial relief as the Court deems appropriate.

DATED: April 27, 2026                    Respectfully submitted,


*/s/ Alok Nadig*
ALOK NADIG
MICHAEL PALMER
RUSSELL KORNBLITH
**SANFORD HEISLER SHARP McKNIGHT, LLP**
17 State Street, 37th Floor
New York, NY 10004
Telephone: (646) 402-5650
anadig@sanfordheisler.com
mpalmer@sanfordheisler.com
rkornblith@sanfordheisler.com

CHARLES FIELD (admitted *pro hac vice*)
**SANFORD HEISLER SHARP McKNIGHT, LLP**
7911 Herschel Avenue, Suite 300
La Jolla, CA 92037
Telephone: (619) 327-9832
cfield@sanfordheisler.com

***Attorneys for Plaintiff Rajkumar Rajappan***