**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAJKUMAR RAJAPPAN, | Case No. 26-cv-00785 |
| *Plaintiff*, | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT** |
| v. | |
| BLOOMBERG L.P., *et al.*, | |
| *Defendants*. | **ORAL ARGUMENT REQUESTED** |

Reginald Goeke
E. Brantley Webb (admitted *pro hac vice*)
Margaret Vander Woude (admitted *pro hac vice*)
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
rgoeke@mayerbrown.com
bwebb@mayerbrown.com
mvanderwoude@mayerbrown.com

Ankur Mandhania
(*pro hac vice* pending)
MAYER BROWN LLP
101 2nd St.
17th Floor
San Francisco, CA 94105
(415) 874-4263
amandhania@mayerbrown.com

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.      Plaintiff Has Not Established Standing for Parts of His Claim ........................................ 2

II.     Plaintiff Fails to State A Claim for Breach of the Duty of Prudence ............................... 4

      A.      Modest Underperformance Alone Cannot Create an Inference of
            Imprudence ................................................................................................... 4

      B.      The Alleged Underperformance Is Neither Substantial Nor Persistent ................. 6

      C.      Plaintiff's Proposed Comparators Are Not Meaningful Benchmarks ................... 8

III.    Plaintiff Fails to State a Claim for Breach of the Duty to Monitor ................................ 10

IV.     Plaintiff's Fiduciary Status Allegations Are Conclusory ............................................. 10

V.      Plaintiff's Judicial Notice Arguments Fail ................................................................. 11

CONCLUSION ................................................................................................................. 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Oshkosh Corp.*,
  47 F.4th 570 (7th Cir. 2022) ..................................................................................9

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
  137 F.4th 1015 (9th Cir. 2025), *cert. granted*, 223 L. Ed. 2d 553 (Jan. 16,
  2026) .........................................................................................................................9

*Bracalente v. Cisco Sys., Inc.*,
  2023 WL 5184138 (N.D. Cal. Aug. 11, 2023) ............................................................6

*Carter v. San Pasqual Fiduciary Tr. Co.*,
  2016 WL 6803768 (C.D. Cal. Apr. 18, 2016) ..........................................................10

*Collins v. Northeast Grocery, Inc.* ("*Collins I*"),
  149 F.4th 163 (2d Cir. 2025) ............................................................................2, 3, 5

*Collins v. Northeast Grocery, Inc.* ("*Collins II*"),
  2025 WL 2383710 (2d Cir. Aug. 18, 2025)..................................................... *passim*

*Coulter v. Morgan Stanley & Co.*,
  753 F.3d 361 (2d Cir. 2014)....................................................................................10

*Cunningham v. Cornell Univ.*,
  2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017), *aff'd*, 86 F.4th 961 (2d Cir.
  2023), *rev'd and remanded on other grounds*, 604 U.S. 693 (2025) ......................................11

*Disberry v. Employee Relations Committee of Colgate-Palmolive Co.*,
  646 F. Supp. 3d 531 (S.D.N.Y. 2022)......................................................................11

*Dorman v. Charles Schwab Corp.*,
  2019 WL 580785 (N.D. Cal. Feb. 8, 2019) ...............................................................7

*Falberg v. Goldman Sachs Grp.*,
  2020 WL 3893285 (S.D.N.Y. July 9, 2020) ...............................................................6

*Gaetano v. MVHS, Inc.*,
  2026 WL 850360 (N.D.N.Y. Mar. 27, 2026) ............................................................3

*Gonzalez v. Northwell Health*,
  2024 WL 6935277 (E.D.N.Y. Mar. 26, 2024)........................................................7, 8

*Gonzalez v. Northwell Health, Inc.*,
  632 F. Supp. 3d 148 (E.D.N.Y. 2022) ......................................................................6

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Goodman v. Columbus Reg'l Healthcare Sys.*,
    2022 WL 228764 (M.D. Ga. Jan. 25, 2022) ...............................................................5

*Hughes v. Nw. Univ.*,
    595 U.S. 170 (2022).......................................................................................................4, 6

*Jacobs v. Verizon Commc'ns*,
    2017 WL 8809714 (S.D.N.Y. Sept. 28, 2017)............................................................5

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991).......................................................................................12

*Matney v. Barrick Gold of N. Am.*,
    80 F.4th 1136 (10th Cir. 2023) ................................................................................8, 9

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) .......................................................................................9

*In re Nokia ERISA Litig.*,
    2011 WL 7310321 (S.D.N.Y. Sep. 6, 2011)..............................................................10

*In re Omnicom ERISA Litig.*,
    2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021)...............................................................5

*Savage v. Sutherland Glob. Servs., Inc.*,
    521 F. Supp. 3d 308 (W.D.N.Y. 2021) .....................................................................11

*Singh v. Deloitte LLP*,
    123 F.4th 88 (2d Cir. 2024) .........................................................................................9

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) ...................................................................................1, 9

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.*
    *Morgan Stanley Inv. Mgmt.* ("*PBGC*"),
    712 F.3d 705 (2d Cir. 2013).....................................................................................4, 5

*Szalanski v. Arnold*,
    609 F. Supp. 3d 698 (W.D. Wis. 2022) ....................................................................10

**Other Authorities**

Complaint, *Collins v. Ne. Grocery, Inc.*,
    No. 5:24-cv-00080 (N.D.N.Y. Jan. 17, 2024), ECF No. 1 ........................................3

**INTRODUCTION**

Plaintiff's Amended Complaint ("AC") claims that Defendants violated ERISA because the Harbor Capital Appreciation Fund ("Harbor Fund") and the Parnassus Core Equity Institutional Fund ("Parnassus Fund") were imprudent investment options for the Bloomberg L.P. 401(k) Plan (the "Plan"). However, Plaintiff's allegations are insufficient as a matter of law to state an ERISA imprudence claim. Plaintiff identifies no disloyalty, no misconduct, no conflict of interest, no prohibited transaction, and no defect in the fiduciaries' decision-making process. He argues, simply, that a prudent fiduciary would have removed both funds after they underperformed -0.67% at year-end 2019. Opp. 1. The Court should not infer imprudence from such slight underperformance.

ERISA fiduciaries do not, and cannot, guarantee that all actively-managed investment options on their menu outperform *all the time*. To the contrary, prudent fiduciaries are expected to exercise judgment and patience in the face of ordinary market fluctuations. Reacting to modest short-term underperformance by constantly switching out investment options would itself be imprudent. "Precipitously selling a well-constructed portfolio in response to disappointing short-term losses ... is one of the surest ways to frustrate the long-term growth of a retirement plan." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022). Plaintiff identifies no authority that permits his case to proceed based on such slight underperformance leading up to the class period with no other indication of imprudence.

Likewise, Plaintiff does not plausibly allege that his proposed comparator funds are proper benchmarks against which to measure the challenged funds' performance. He is wrong that the appropriateness of his comparators must be deferred until after discovery—he takes that position only by ignoring the Second Circuit's recent decision in *Collins v. Northeast Grocery, Inc.*

("*Collins II*"), 2025 WL 2383710, at *3 (2d Cir. Aug. 18, 2025). In any event, he cannot demonstrate comparability with general statements about investment goals that apply to thousands of funds.

Ultimately, the rule Plaintiff seeks to impose through this case—that plan fiduciaries must swap out modestly underperforming funds for the top performers of the moment—is neither required by ERISA nor in plan participants' best interests. It is a hindsight-driven approach that would expose fiduciaries to liability whenever another fund happens to perform better in retrospect. ERISA does not require fiduciaries to identify tomorrow's winners, and courts have repeatedly rejected attempts to transform ordinary investment outcomes into fiduciary breaches. The Court should reject Plaintiff's tactic.

## ARGUMENT

## I.    PLAINTIFF HAS NOT ESTABLISHED STANDING FOR PARTS OF HIS CLAIM

Plaintiff concedes he never invested in the Parnassus Fund. AC ¶¶ 41-42. His attempt to manufacture standing to challenge that fund by linking it to the Harbor Fund through conclusory allegations about "Defendants' flawed monitoring and retention process" fails under *Collins v. Northeast Grocery, Inc. ("Collins I")*, 149 F.4th 163, 172 (2d Cir. 2025). There, the Second Circuit held that the plaintiffs "failed to allege individual harm ***from the allegedly flawed processes*** resulting in the retention of the criticized investment options." *Id.* at 172 (emphasis added). *Collins I* expressly rejected the approach Plaintiff advocates here—the use of "conclusory allegations of plan-wide mismanagement" to support standing by all plan participants. *Id.*[1]

---

[1] Plaintiff wrongly argues that the *Collins* plaintiffs "had not invested in **any** of the relevant options they were challenging" (Opp. 5-6). The court found standing with respect to the portfolio manager theory because the plaintiffs invested in a fund impacted by the specific, common methodological flaw pleaded.

Thus, for standing, Plaintiff must allege that he personally invested in funds impacted by a specific flawed process.[2] Plaintiff fails that test here because he identifies no specific flawed process at all, instead alleging only that two separate funds purportedly underperformed relative to two separate benchmarks. *Collins I* expressly rejected such generic and conclusory allegations of plan-wide mismanagement. Plaintiff contends he does not make "conclusory" allegations of plan-wide mismanagement, but "alleges that Defendants employed the same Plan-level monitoring" for all Plan investments. Opp. 6. That is the same thing. The AC alleges no specific flaws leading to retention of the Harbor Fund, so it is impossible to infer whether the same supposed flaws led to retention of Parnassus. Put differently, if the mere allegation of underperformance as to one fund gave standing to assert underperformance claims with respect to all other funds, the *Collins I* rejection of conclusory allegations of plan-wide mismanagement would be eviscerated.

The remaining cases Plaintiff cites on standing are unavailing because they were decided ***before*** *Collins I.* Opp. 7-8. Courts considering standing after *Collins I* have consistently held that ERISA plaintiffs lack standing to challenge funds in which they did not invest. *See, e.g.*, *Gaetano v. MVHS, Inc.*, 2026 WL 850360, at *4-6 (N.D.N.Y. Mar. 27, 2026) (allowing claims to proceed only against funds in which the plaintiffs invested and finding no standing to challenge funds in which no plaintiff invested).[3]

---

[2] The *Collins* complaint contained specific allegations that the plan fiduciaries "ignored probable trust income (yields) repeatedly over many years; ignored many types of extra costs that directly reduced participants' returns every business day; ignored their portfolio managers' concentrated and undiversified portfolios," and "selected/retained novice, inexperienced portfolio managers who sold every position they bought two years earlier" in connection with the three challenged funds. AC ¶¶ 60-71, *Collins v. Ne. Grocery, Inc.*, No. 5:24-cv-00080 (N.D.N.Y. Jan. 17, 2024), ECF No. 1. Plaintiff identifies no such specific flaw in Defendants' process here.

[3] Plaintiff concedes that he has no standing to pursue prospective injunctive relief by arguing he might seek "retrospective" declaratory or injunctive relief for past harms. Opp. 9.

## II.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF THE DUTY OF PRUDENCE

Plaintiff relies entirely on performance data to try to create an inference of imprudence and points to no conflicts or other defects. With this pleading strategy, Plaintiff must clear a high bar. The Supreme Court recognizes that there is a "range of reasonable judgments a fiduciary may make." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022). Thus, Plaintiff's allegations must show that the Plan fiduciaries' investment decisions lie so far outside the range of all reasonable judgment that a prudent fiduciary *would have* removed the challenged funds. *See Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt.* ("*PBGC*"), 712 F.3d 705, 727 (2d Cir. 2013) (plaintiff must "allege facts that, if accepted as true, would show that a prudent fiduciary in like circumstances would have acted differently").

To state a substantive investment imprudence claim, the Second Circuit requires substantial, sustained underperformance or additional allegations that the challenged investments were unsuitable. Because Plaintiff fails in this respect, he cannot move to the next step of comparing the challenged funds against his handful of comparators—cherrypicked with the benefit of hindsight. Plaintiff's allegations are simply insufficient to show the investments were so far "outside the range of reasonable judgments" that a prudent fiduciary would have removed them.

### A.    Modest Underperformance Alone Cannot Create an Inference of Imprudence

Plaintiff concedes he must plead "sufficient circumstantial factual allegations" for the Court to infer imprudence. Opp. 9-10. What is necessary are "facts sufficient to raise a plausible inference that the investments at issue were so plainly risky at the relevant times that an adequate investigation would have revealed their imprudence." *PBGC*, 712 F.3d at 719. For example, the Second Circuit has held that "[t]he existence of lower-cost, better performing alternative funds, ***when combined with other circumstantial evidence of imprudence***, may support an inference" of

4

fiduciary breach. *Collins I*, 149 F.4th at 173 (emphasis added). Modest underperformance, without allegations of "any such surrounding circumstances that might make this inference [of imprudence] plausible" (*PBGC*, 712 F.3d at 722), fails to state a claim.

Thus, while Plaintiff concedes that the "substantiality [of the claims] depends on context" (Opp. 14), he offers none. He relies *solely* on modest underperformance. He does not allege, for example, that the challenged funds' managers were inexperienced, that the challenged funds invested in plainly imprudent assets or faced significant investor outflows, that the fiduciaries chose an improper share class, or that some conflict of interest drove the fiduciary decision. In his brief, he now cites "duration, compounding, fees, assets at stake, comparator quality, active-management mandate, and participant losses" (*id.*)—but these are simply the components of supposed underperformance. None of his allegations supply any additional context or reason for inferring imprudence.

Plaintiff cites decisions purportedly holding that pure underperformance allegations, such as his, state a claim. Opp. 12-16. But none of the cases he cites stand for that proposition. Each involved allegations of underperformance *plus* other indicia of imprudence—such as higher share classes, excessive fees, conflicts of interest, substantial fund outflows, or disloyalty—that appear nowhere in his AC. *See Goodman v. Columbus Reg'l Healthcare Sys.*, 2022 WL 228764, at \*2 (M.D. Ga. Jan. 25, 2022) (alleging higher share classes in underperforming funds charging excessive management and recordkeeping fees); *In re Omnicom ERISA Litig.*, 2021 WL 3292487, \*4, \*12 (S.D.N.Y. Aug. 2, 2021) (alleging $16 billion in net outflows from challenged funds); *Jacobs v. Verizon Commc'ns*, 2017 WL 8809714, at \*1-2 (S.D.N.Y. Sept. 28, 2017) (alleging custom investments with excessive risk, hidden fees, highest expense ratios, and benchmark

underperformance up to 80%); *Falberg v. Goldman Sachs Grp.*, 2020 WL 3893285, at \*10 (S.D.N.Y. July 9, 2020) (alleging underperforming proprietary funds and self-dealing).

Plaintiff fails to allege any facts beyond modest underperformance. That does not suggest that the challenged funds were so "plainly risky" (Opp. 17) that they fell outside of the reasonable range of fiduciary judgment. Ultimately, Plaintiff's proposed approach "flatten[s] [the] nuanced prudence evaluation into a one-dimensional comparison" that considers only performance, giving no regard to the "reasonable judgments" a fiduciary can make. *Bracalente v. Cisco Sys., Inc.*, 2023 WL 5184138, at \*4 (N.D. Cal. Aug. 11, 2023). This would subject every fiduciary who does not select the best-performing fund in every instance to a costly lawsuit—which plainly discourages offering retirement plans.

**B.        The Alleged Underperformance Is Neither Substantial Nor Persistent**

Where a plaintiff attempts to plead a fiduciary breach claim based *solely* on alleged underperformance, the underperformance must be "substantial" and "over a lengthy period." *Collins II*, 2025 WL 2383710, at \*3; *see also, e.g.*, *Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 163 (E.D.N.Y. 2022) (underperformance must be "consistent" and "substantial"). This standard serves to ensure that fiduciaries have enough room to make "a range of reasonable judgments" (*Hughes*, 595 U.S. at 177) in the face of unpredictable financial markets.

Plaintiff claims that a prudent fiduciary *would have* removed the two challenged funds, but the data on which he relies does not establish that the challenged funds were so risky or antithetical to reasonable investment strategy that their retention was imprudent.

*First*, Plaintiff claims that the Harbor Fund's underperformance was "persistent." But this is immediately belied by his use of snapshots from primarily even-numbered years during his 10-year look-back period. Opp. 10 (considering only years 2010, 2012, 2014, 2016, and 2019).

6

Charted against its benchmark, the Harbor Fund's performance looks anything other than consistently poor. *See* Mot. 15, tbl. 1.



The variability in returns confirms there certainly is not "persistent" or "sustained" underperformance. *See, e.g.*, *Dorman v. Charles Schwab Corp.*, 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019) (dismissing claims that challenged funds persistently underperformed when the funds both overperformed and underperformed their benchmark in the previous five years). There is no period where the Harbor Fund underperformed for even three years in a row.

"Consistent and substantial underperformance is required because a prudent fiduciary may—and often does—retain investments through a period of underperformance as part of a long-range investment strategy, instead of reflexively jettison[ing] investment options in favor of the prior year's top performers." *Gonzalez v. Northwell Health*, 2024 WL 6935277, at *7 (Mar. 26, 2024) (internal citation omitted). Indeed, if Plaintiff's proposed investing rule had been followed, the fiduciaries would have removed the Harbor Fund from the Plan at the beginning of 2020, depriving participants of access to the Fund in the year it generated a 54% return and outperformed its benchmark by almost 16%.

***Second***, Plaintiff now contends that using the "annualized percentage figures" he pleaded "is misleading" because "[a]nnualized underperformance may look smaller when abstracted from the Plan's scale." Opp. 14-15 (arguing that because the Plan held $5.7 billion in assets, any underperformance translates into "large, concrete losses"). In other words, his challenged funds' slight underperformance becomes "substantial" because the Bloomberg Plan is large. *Id.* This argument attempts to punish employers with large plans. A fund's -0.67% benchmark return is the same level of return regardless of the amount invested in the fund. Plaintiff also attempts to redefine "substantial underperformance" as a large *cumulative* number. He argues that the Harbor Fund lagged its index by a compounded 23.41% over 10 years. Opp. 14; *see also* AC tbl. 2.a (Parnassus Fund cumulative return). Plaintiff's notion is not the law—for good reason. Courts—like fiduciaries and other investors—look at annualized numbers. *Gonzalez*, 2024 WL 6935277, at *7-9 (collecting cases). Plaintiff cannot point to a single case that relies on a cumulative metric over many years in place of annualized performance.

### C.     Plaintiff's Proposed Comparators Are Not Meaningful Benchmarks

As an initial matter, where a complaint fails to plead substantial, sustained underperformance, the Court need not move to the next step of determining whether the comparator funds are meaningful. A different rule would encourage ERISA plaintiffs to use hindsight to challenge even top-performing funds so long as they could find another fund that did better.

In any event, "[i]mprudence cannot be inferred based solely on allegations identifying the existence of lower cost or better performing alternative funds." *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1154 n.15 (10th Cir. 2023). Courts have consistently held that "[i]t is not enough for a plaintiff simply to allege that the fiduciaries could have obtained better results … by choosing

8

different investments." *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1021 (9th Cir. 2025), *cert. granted*, 223 L. Ed. 2d 553 (Jan. 16, 2026); *see also, e.g.*, *Smith*, 37 F.4th at 1166 ("[M]erely pointing to another investment that has performed better … does not suffice to plausibly plead an imprudent decision."); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) (same). Put differently, identifying better-performing comparators in hindsight does not identify the reasonable range of investments and therefore cannot support an inference that the challenged funds fell outside of it.

Here, the Court should reject the comparators Plaintiff has selected because they are not "meaningful benchmarks" and not comparable to the challenged funds. *Collins II*, 2025 WL 2383710, at *2. Plaintiff's argument that any inquiry into his comparators is "premature" at this stage (Opp. 20-21) is foreclosed by Second Circuit law. *Id.*[4]

Plaintiff's passive index fund comparators cannot create an inference of imprudence as a matter of law. Courts widely recognize that passively managed funds are not meaningful benchmarks for actively managed funds because of their dissimilar investment strategies— replicating an index rather than seeking to outperform it through active selection. *Smith*, 37 F.4th at 1165-66.

His two active comparators for each challenged fund likewise are not meaningful benchmarks and are insufficient to create an inference of imprudence. A meaningful benchmark

---

[4] Plaintiff's argument that the Court should not follow *Collins II* because it is a "non-precedential summary order" is hard to fathom. The decision is clear that ERISA plaintiffs must "allege 'meaningful' benchmarks against which to compare the criticized funds," 2025 WL 2383710, at *2, and cites another recent Second Circuit opinion imposing a "meaningful benchmark" standard on fee-based imprudence claims, *Singh v. Deloitte LLP*, 123 F.4th 88, 95-96 (2d Cir. 2024). It agrees with almost every other circuit court decision on the issue. *See, e.g.*, *Anderson*, 137 F.4th at 1022; *Meiners*, 898 F.3d at 822; *Smith*, 37 F.4th at 1167; *Albert v. Oshkosh Corp.*, 47 F.4th 570, 581-82 (7th Cir. 2022); *Matney*, 80 F.4th at 1152–55.

must share a similar investment strategy, asset allocation, and risk profile to be meaningful, not merely the label of "active management." Plaintiff appears to assume that every large cap actively managed fund is a meaningful benchmark for every other large cap actively managed fund so long as the funds share the same prospectus benchmark. Such a standard is meaningless and simply allows plaintiffs to use hindsight to select the best performing funds after the fact. Defendants' motion to dismiss (at 23-26) identifies material differences between the challenged funds and Plaintiff's proposed actively managed comparators.

### III. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF THE DUTY TO MONITOR

Plaintiff's Opposition concedes that his monitoring claim rises or falls with his prudence claim. Opp. 21. Because the AC does not adequately allege a prudence claim, the monitoring claim fails. *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 368 (2d Cir. 2014).

Beyond this, Plaintiff confuses his failure to monitor fiduciary delegees claim under ERISA with his failure to prudently monitor investments claim. Opp. 21-22. The two are distinct. Plaintiff alleges that the Investment Committee ("IC") selected and monitored the Plan's investment options. AC ¶ 33. To state a claim that other Defendants failed to properly monitor the IC, Plaintiff must allege specific facts about the other Defendants' monitoring process. *In re Nokia ERISA Litig.*, 2011 WL 7310321, at *5 (S.D.N.Y. Sep. 6, 2011); *see also, e.g.*, *Carter v. San Pasqual Fiduciary Tr. Co.*, 2016 WL 6803768, at *5 (C.D. Cal. Apr. 18, 2016); *Szalanski v. Arnold*, 609 F. Supp. 3d 698, 706 (W.D. Wis. 2022). Because he alleges no facts at all about Defendants' monitoring process, he fails to state a monitoring claim.

### IV. PLAINTIFF'S FIDUCIARY STATUS ALLEGATIONS ARE CONCLUSORY

The AC fails to allege what actions either Bloomberg L.P. or the Retirement Plan Committee ("RPC") performed with respect to the challenged funds. Plaintiff's conclusory

10

assertion that all Defendants "controlled the selection and retention of investment options" (Opp. 22) contradicts the allegation that the IC "chooses … and periodically monitors and reviews the Plan's investment options." AC ¶ 33. Further, Plaintiff's statement in his brief does not satisfy the requirement to plead facts establishing each Defendant's fiduciary role. Mot. 27-28.[5]

## V.  PLAINTIFF'S JUDICIAL NOTICE ARGUMENTS FAIL

Finally, Plaintiff argues that the Court should not consider the publicly-available fund prospectuses or Form 5500s cited in Defendants' motion to dismiss. Opp. 23-24. In ERISA cases, courts commonly and routinely take judicial notice of Form 5500s and fund prospectuses, which are publicly filed with government regulatory agencies. *See, e.g.*, *Cunningham v. Cornell Univ.*, 2017 WL 4358769, at *4 (S.D.N.Y. Sept. 29, 2017), *aff'd*, 86 F.4th 961 (2d Cir. 2023), *rev'd and remanded on other grounds*, 604 U.S. 693 (2025). The Court may rely on these documents regardless of their connection to the AC because they are public disclosure documents that are a proper subject of judicial notice in this jurisdiction. *Id.*; *see also, e.g.*, *Savage v. Sutherland Glob. Servs., Inc.*, 521 F. Supp. 3d 308, 312 (W.D.N.Y. 2021) ("[Fund] prospectuses are publicly-available documents … therefore the Court will take judicial notice of those documents.")

In fact, Plaintiff does not dispute the authenticity of the documents cited but instead argues the AC "does not refer to or obviously rely on" them. This is entirely disingenuous: The AC includes information only available to Plaintiff through publicly-filed Form 5500s. *See, e.g.*, AC ¶¶ 18, 51 (plan size as of year-end and amounts invested in challenged funds). Plaintiff cannot avoid documents integral to the AC by simply refusing to identify them by name.

---

[5] *Disberry v. Employee Relations Committee of Colgate-Palmolive Co.*, 646 F. Supp. 3d 531, 542-43 (S.D.N.Y. 2022), required the complaint to "tie[] the fiduciary acts of [named defendant] to the wrongdoing." The AC fails that test with Bloomberg L.P. and RPC.

With respect to the publicly-filed prospectuses, Plaintiff provides *annualized* performance calculations for 2010-2019 (AC tbls 1.a & 2.a) but deliberately omits the *annual* performance data that he used to perform his calculations because it undermines his claims. The annual performance data comes directly from the funds' government-filed prospectuses or public fund fact sheets. Again, Plaintiff relied on this data as a matter of simple math to plead the allegations in his AC. His argument that the Court may consider only the output of his simple calculations and not their inputs should be strongly rejected as an exercise in obfuscation. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991).

Finally, Plaintiff's argument that the Court may only take judicial notice of "what the records state, not whether what the documents state is true" (Opp. 25) does not help him. Prudent fiduciaries would have considered exactly what the documents state—*e.g.*, the publicly-reported performance data. Thus, whether that data might contain a mistake is beside the point for purposes of the pleading standard, which considers whether Plaintiff has adequately alleged that a prudent fiduciary would have removed the challenged funds.

**CONCLUSION**

The AC should be dismissed with prejudice.

Dated: June 10, 2026    */s/ E. Brantley Webb*

E. Brantley Webb (admitted *pro hac vice*)
Reginald Goeke
Margaret Vander Woude (admitted *pro hac vice*)
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
rgoeke@mayerbrown.com
bwebb@mayerbrown.com
mvanderwoude@mayerbrown.com

12

Ankur Mandhania
(*pro hac vice* pending)
MAYER BROWN LLP
101 2nd St.
17th Floor
San Francisco, CA 94105
(415) 874-4263
amandhania@mayerbrown.com

*Counsel for Defendants*

13

**CERTIFICATE OF COMPLIANCE**

This brief complies with the word-count limitations imposed by Section 2.h of Individual

Rules and Practices in Civil Cases and Local Civil Rule 7.1(c). Excluding those words exempted

from counting, this brief contains 3,500 words.

By: */s/ E. Brantley Webb*
      E. Brantley Webb